# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUDY K. JONES,<br><br>                 **Plaintiff,**<br><br>     **vs.**<br><br>**CUSTER COUNTY, a political subdivision; STEVEN BOWERS, individually and in his capacity as County Attorney for Custer County; GLENN CLARK, both individually and in his capacity as Deputy County Attorney for Custer County; NEBRASKA STATE PATROL, a state agency; COL. DAVID SANKEY, Superintendent of Law Enforcement and Public Safety for the Nebraska State Patrol, individually and in his official capacity; JEFF ROGERS, individually and as an investigator of the Nebraska State Patrol; CHRIS KOBER, individually and as an investigator of the Nebraska State Patrol; and CUSTER COUNTY ATTORNEY'S OFFICE, a Nebraska Political Subdivision;**<br><br>               **Defendants.** | **8:17CV394**<br><br><br>**AMENDED MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion to Dismiss, ECF No. 53, filed by Defendants Chris Kober, Jeff Rogers, David Sankey, and the Nebraska State Patrol (the NSP Defendants). Also before the Court is the Motion to Dismiss, ECF No. 55, filed by Defendants Steven Bowers, Glenn Clark, Custer County, and the Custer County Attorney's Office (the Custer County Defendants). For the reasons stated below, the Motions will be granted, but Jones will be granted leave to file an amended complaint against Kober, Rogers, and Sankey, in their individual capacities, limited to the following

claims: (1) a Fourteenth Amendment claim for manufactured false evidence, (2) a Fourteenth Amendment claim for reckless investigation, and (3) a § 1983 civil conspiracy claim.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, and assumed true for purposes of the pending Motions to Dismiss.

Plaintiff Judy Jones was a practicing direct-entry midwife.[1]  As a "devout Christian," she believed her practice was "based in scripture" and "an essential part of her religious practice."  Comp. ¶ 18, ECF No. 1, Page ID 5.  On April 15, 2011, Jones entered into a contract with Jeff and Whitney Fenske "to spiritually minister to and support Whitney during her pregnancy and in the delivery of their child."  *Id.* at ¶ 19.  On September 24, 2011, Whitney gave birth to a son at home and with Jones's services.

Shortly after birth, the baby, Eli Fenske, had difficulty breathing and Jones provided "rescue breathing" until he was transported to a medical center in Broken Bow, Nebraska.  *Id.* at ¶¶ 24-5.  Eli was transported from the medical center in Broken Bow to a hospital in Kearney, Nebraska, and then to the University of Nebraska Medical Center (UNMC) in Omaha, Nebraska.  He was placed on hospice care and discharged on October 11, 2011.  On October 20, 2011, Eli died from "dehydration and malnutrition secondary to withdrawal of food and fluids on hospice care."  *Id.* at ¶ 37.  Jones alleged the doctors and staff at the medical centers and hospitals failed to diagnose Eli with hypoglycemia, which was caused by "Smith-Lemli-Opitz syndrome."  *Id.* at ¶¶ 40.  She

---

[1] The Complaint does not define the duties or qualifications of a direct-entry midwife, but states that Jones was not a "certified-nurse midwife, physician, surgeon, or registered nurse."  Comp. ¶ 20, ECF No. 1, Page ID 5.  The Complaint does not allege that Jones received any formal education or training.

contends that her direct-entry midwifery services did not contribute to the cause of death in any way.

Jeff Rogers and Chris Kober of the Nebraska State Patrol investigated Eli Fenske's death. They interviewed both Whitney and Jeff Fenske; Dr. Angela Pruden, the Emergency Room staff physician at the Broken Bow medical center; Dr. David Bolam of (UNMC) in Omaha; and contacted the Nebraska Department of Health and Human Services Licensure Unit. However, they did not interview the coroner physician or obtain a copy of his autopsy report, and they did not review any of Eli Fenske's medical records. Nor did they interview any of the treating physicians at the hospital in Kearney, Nebraska. Ultimately, Rogers concluded that Jones acted recklessly in caring for Eli Fenske during his birth and, on December 10, 2012, he submitted an affidavit in support of an arrest warrant for the arrest of Jones on a charge of manslaughter.

That same day, Jones was charged with manslaughter in a criminal complaint filed by Glenn Clark, the Deputy County Attorney for Custer County. On March 21, 2013, Clark filed an amended complaint and added a charge for practicing medicine without a license in violation of Nebraska's Uniform Credentialing Act, Neb. Rev. Stat. § 38-101 *et seq*. On April 4, 2013, the amended complaint was dismissed, without prejudice, by the County Court for Custer County, Nebraska, because charges under the Credentialing Act must be brought by the Nebraska Attorney General and because there was insufficient evidence to support the charge of manslaughter. No subsequent investigation was conducted.

On June 13, 2013, Jones was again charged by the Custer County Attorney's Office with manslaughter, practicing medicine or nursing without a license, criminal

impersonation, negligent child abuse resulting in the death of child, and intentional child abuse resulting in the death of child. The charges were based on the same evidence as the prior charges against Jones. On July 31, 2017, the case was "bound over to District Court." Comp. ¶ 69, ECF No. 1, Page ID.[2] On October, 19, 2015, the Custer County Attorney, Steven Bowers, dismissed the charges against Jones.

Jones filed this action against the NSP Defendants and the Custer County Defendants under 42 U.S.C. § 1983 for violations of her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Each person named as a defendant has been sued in both the individual and official capacity. The NSP Defendants and the Custer County Defendants argue Jones's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1)[3] and 12(b)(6).

### STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[2] The Complaint does not state which "District Court" the case was transferred to or the procedural context of the transfer.

[3] The Court does not base any of its findings on a lack of subject matter jurisdiction.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

In its "Preliminary Statement," the Complaint states "Jones brings this case for monetary damages for violation of her civil rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Federal Constitution. This action is brought pursuant to 42 U.S.C. § 1983." Comp. ¶ 1, ECF No. 2, Page ID 1; *see also* Pl.'s Br., ECF No. 62, Page ID 308 (summarizing "Constitutional injuries").[4] Jones also enumerates a claim for "conspiracy to violate civil rights" and asserts a claim for failure to train or supervise under § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cook v. City of Bella Villa*, 582 F.3d 840, 848-49 (8th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The arguments presented by the NSP Defendants and the Custer County Defendants are substantially similar. The Court will first address common issues applicable to all parties, and then the separate issues raised by the NSP Defendants and the Custer County Defendants, in turn.

## I. Fifth, Sixth, and Eighth Amendment Claims

---

[4] Although the Complaint lists a separate claim under § 1983 for malicious prosecution, "[a] claim that a § 1983 plaintiff 'was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process.'" *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 904 (E.D. Mo. 2017) (quoting *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016)); *accord Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (citing *Manuel v. City of Joliet*, __U.S.__, 137 S. Ct. 911, 914-15 (2017)). Accordingly, the Court will evaluate Jones's claim for "malicious prosecution" under the Fourth Amendment.

Jones's § 1983 claims for violations of her Fifth, Sixth, and Eighth Amendment rights lack plausibility.[5] *See McCoy v. Carter-Jones Timber Co.*, 352 Fed. App'x 119, 121-22 (8th Cir. 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1042-43 (8th Cir. 1991) (District courts may properly dismiss § 1983 claims sua sponte for failure to state a claim for relief where the claims obviously fail on the facts alleged)).

First, Jones claims all the Defendants violated her substantive due process rights under the Fifth Amendment. Pl.'s Br., ECF No. 62, Page ID 309. However, "[t]he due process clause of the Fifth Amendment applies only to the federal government[,]" *Truong v. Hassan*, 829 F.3d 627, 630-31 (8th Cir. 2016) (citing *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009)), and there are no allegations or claims in the Complaint that a federal government actor deprived Jones of substantive due process. *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012).

Second, Jones claims money damages because conduct of all the Defendants deprived her of her right to a speedy trial under the Sixth Amendment. However, the charges against Jones were dismissed by Custer County before trial and "[t]he sole remedy for a violation of the speedy trial right [is] dismissal of the charges[.]" *Betterman v. Montana*, __U.S.__, 136 S. Ct. 1609, 1615 (2016) (citing *Strunk v. United States*, 412 U.S. 434, 440 (1973)); *see also Dabbs v. Peoria Cty. Ill.*, Case No. 1:16-cv-01463-JBM-JEH, 2016 WL 7391514, at *3 (C.D. Ill. Dec. 21, 2016) (finding the plaintiff failed to state

---

[5] District courts in the Eighth Circuit have "criticized the filing of 'kitchen sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). "It is the plaintiff's burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Id.*

a speedy trial claim because the criminal proceedings against him were terminated and there was no other remedy the court could provide).

Finally, Jones claims her pretrial detention, itself, constituted cruel and unusual punishment. Yet the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to pretrial detainees.[6] *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014); *see also Manuel v. City of Joliet, Ill*, __U.S.__, 137 S. Ct. 911, 914 (2017) ("The Fourth Amendment . . . establishes the standards and procedures governing pretrial detention."). Further, none of the Defendants was responsible for setting Jones's bail and there are no allegations that she was ordered to pay a fine. *Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (affirming district court's dismissal of Eighth Amendment excessive bail claim "because none of the defendants set [the plaintiff's] bail"); *see also Smith v. Scott Cty. Jail*, No. 1:06-CV-145 CAS, 2007 WL 586801, at *2 (E.D. Mo. Feb. 21, 2007) (dismissing Eighth Amendment claim for excessive bail because "none of the defendants was personally and directly responsible for setting the amount of plaintiff's bail").

Accordingly, Jones's § 1983 claims for a violation of her Fifth, Sixth, and Eighth Amendment rights will be dismissed, with prejudice.[7]

## II. Statute of Limitations

---

[6] Although a pretrial detainee may have a § 1983 cause of action based on conditions of confinement under the Fourteenth Amendment's Due Process Clause, *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014), Jones did not allege any facts regarding the conditions of her pretrial detention and did not claim the conditions were so poor as to violate the Fourteenth Amendment.

[7] To the extent Jones has attempted to assert a claim under the Nebraska Uniform Credentialing Act, no private cause of action exists. *See Petit v. Neb. Dep't of Corr. Servs.*, 867 N.W.2d 553, 560 (Neb. 2015) ("Whether a statute creates a private right of action depends on the statute's purpose and whether the Legislature intended to create a private right of action."); *see also* Neb. Rev. Stat. 38-1,107 (expressly granting the Nebraska Attorney General the authority to enforce the Credentialing Act).

Both the NSP Defendants and the Custer County Defendants argue that Jones's entire action is barred by the applicable statute of limitations. Based on the facts alleged in her Complaint, Jones's First Amendment Free Exercise claim and her Fourth Amendment false imprisonment claim are not timely.

The length of the statute of limitations for a § 1983 claim is the same as the length of the statute of limitations "for personal-injury torts" in "the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, the applicable statute of limitations in this case is four years. Neb. Rev. Stat. § 25-207. However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). "Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)). "Under those principles, it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief[.]'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)); *see also Anthony K. v. Neb. Dep't of Health and Human Servs.*, 855 N.W.2d 788, 799 (Neb. 2014) (collecting Circuit Court cases).

## A. First Amendment Claim

Jones alleges that "a condition of [her] bond, set by the Court on December 12, 2012, was to cease practice as a midwife." Comp. ¶ 79, ECF No. 1, Page ID 13. She claims this violated her rights under the Free Exercise Clause of the First Amendment and that both the NSP Defendants and Custer County Defendants caused the violation.

Regardless of the merits of this claim,[8] it is barred by the applicable four-year statute of limitations.

The condition that Jones stop practicing as a midwife was imposed, and the statute of limitations began to run, on December 12, 2012. *Anthony K.*, 855 N.W.2d at 799 ("A § 1983 claim accrues 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'") (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Jones filed her Complaint on October 17, 2017, more than four years after her claim accrued. Therefore, her First Amendment Free Exercise claim is not timely and will be dismissed, with prejudice.

### B. Fourth Amendment Claims

The NSP Defendants argue that Jones's claims for her allegedly unconstitutional arrest, pretrial detention, and subsequent prosecution are barred by the applicable statute of limitations as well. These claims are appropriately analyzed under the Fourth Amendment. *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016); *see Manuel*, 137 S. Ct. 911 (2017). False arrest, or imprisonment, and malicious prosecution are, however, "entirely distinct" causes of action and will be analyzed separately. *Wallace*, 549 U.S. at 390; *see also Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) ("Unreasonable seizures imposed *without* legal process precipitate Fourth Amendment false imprisonment claims. Unreasonable seizures imposed *with* legal process precipitate Fourth Amendment malicious-prosecution claims.") (emphasis in original).

---

[8] Jones claims, in part, that the NSP Defendants are liable for the alleged deprivation of her First Amendment rights because they enforced the court order. However, it is well established that "officers are protected by quasi judicial immunity when they enforce a court order." *Rose v. Flairty*, 772 F.3d 552, 554 (8th Cir. 2014).

### 1.  False Arrest/False Imprisonment

In *Wallace*, the Supreme Court explained that "false arrest and false imprisonment overlap; the former is a species of the latter."  549 U.S. at 388 (referring "to the two torts together as false imprisonment").  The statute of limitations for false imprisonment begins to run when the false imprisonment ends and a false imprisonment ends "once the victim becomes held pursuant to [legal process]—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.* at 389.

Jones filed her Complaint on October 17, 2017.  Although the Complaint failed to state the dates on which she was arrested, detained, and released, it stated Jones was formally charged with crimes on December 10, 2012, on March 21, 2013, and on June 13, 2013.  Thus, to the extent Jones's false arrest or imprisonment claim is based on any arrest or detention in connection with these charges, the statute of limitations began to run no later than June 13, 2013, and no claim was filed within four years of that date. *See Wallace*, 549 U.S. at 389 (stating the limitations period for false arrest/false imprisonment begins to run once the arrest or imprisonment is done pursuant to legal process.).  It is clear from the allegations in the Complaint that Jones's arrest was connected to the criminal charges against her and, as such, her Fourth Amendment claim based on her arrest and confinement is barred by the applicable four-year statute of limitations.

### 2.  Malicious Prosecution

"An element of [common law malicious prosecution] is the 'termination of the . . . proceeding in favor of the accused'; and accordingly, the statute of limitations does not start to run until that termination takes place."  *Manuel*, 137 S. Ct. at 921 (quoting *Heck*,

512 U.S. at 484) (ellipsis in original).  The charges against Jones were voluntarily dismissed[9] by Custer County on October 19, 2015.  Thus, the four-year statute of limitations did not begin to run on Jones's malicious prosecution claim until October 19, 2015, and her Complaint was filed well within four years of that date.  If Jones has a plausible malicious prosecution claim based on this dismissal, it is not barred by the statute of limitations.

The Court notes that to the extent Jones bases her malicious prosecution claim on the original charges brought against her and dismissed by the County Court for Custer County on April 4, 2013, that claim is not timely and is barred by the four-year statute of limitations.

## C. Fourteenth Amendment Claim

Jones's claim that all the Defendants fabricated evidence, or recklessly failed to investigate evidence, is governed by the Fourteenth Amendment's due process clause. *Livers v. Schenck*, 700 F.3d 340, 351-52, 354 (8th Cir. 2012) ("Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause."); *see also Riddle v. Riepe*, 866 F.3d 943, 947-48 (8th Cir. 2017).  Although the NSP Defendants and the Custer County Defendants broadly maintain that Jones's entire case is barred by the statute of limitations, the parties have not addressed the issue of

---

[9] Some courts that recognize malicious prosecution as a cognizable claim question whether a voluntary dismissal is a "favorable termination" at all.  *See, e.g., Cordova v. City of Albuquerque*, 816 F.3d 645, 650-51 (10th Cir. 2016) ("Although the dismissal of the assault charges certainly worked to Cordova's benefit, we agree with the district court that it was not a favorable termination under prevailing law.").

when a Fourteenth Amendment fabrication-of-evidence claim accrues. As such, the Court will not dismiss this claim as barred by the statute of limitations at this time.

## III. NSP Defendants' Motion to Dismiss

The NSP Defendants argue that the claims against the NSP and Kober, Rogers, and Sankey, in their official capacities, must be dismissed because they are barred by Eleventh Amendment sovereign immunity. They also argue that the claims against Kober, Rogers, and Sankey, in their individual capacities should be dismissed because they are entitled to qualified immunity.[10]

### A. Eleventh Amendment Sovereign Immunity

The NSP Defendants argue Jones's claims against NSP and Kober, Rogers, and Sankey, in their official capacities, are ultimately claims against the State of Nebraska, which is immune from this damages action.

Jones cannot maintain a § 1983 action for money damages against the State of Nebraska or against Kober, Rogers, and Sankey, in their official capacities. *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990). Therefore, Jones's § 1983 claims for money damages against NSP and against Kober, Rogers, and Sankey, in their official capacities, will be dismissed, with prejudice.

_____

[10] The NSP Defendants also argue that Kober, Rogers, and Sankey cannot be held liable for malicious prosecution, as a matter of law, because they are police officers who lack the authority to make decisions to prosecute. It is not necessary for the Court to address this argument, because Kober, Rogers, and Sankey are entitled to qualified immunity on this claim. Nevertheless, the argument has been rejected by circuits that recognize Fourth Amendment malicious prosecution claims. *See, e.g., Evans v. Chalmers*, 703 F.3d 636, 648 (4th Cir. 2012) (Investigators can be liable when they have lied to or misled prosecutors or failed to disclose exculpatory evidence.).

## B. Qualified Immunity

"Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Carter*, 831 F.3d at 1107). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "an official is entitled to qualified immunity unless both prongs are satisfied," *Kulkay*, 847 F.3d at 642.

Jones's remaining constitutional claims against Kober, Rogers, and Sankey are a Fourth Amendment malicious prosecution claim and a Fourteenth Amendment fabrication-of-evidence claim. Her claims for failure to train or supervise, and civil conspiracy also remain. Kober, Rogers, and Sankey are entitled to qualified immunity on Jones's Fourth Amendment malicious prosecution claim, and Sankey is entitled to qualified immunity on Jones's § 1983 failure to train or supervise claim. It is not

possible at this juncture to determine if these Defendants are entitled to qualified immunity on Jones's Fourteenth Amendment fabrication-of-evidence claims or her civil conspiracy claim, because the allegations in the Complaint lack sufficient specificity. For example, Jones does not specify *what* evidence Kober, Rogers, and Sankey fabricated, or what material evidence they concealed or deliberately ignored.

### 1. Fourth Amendment Malicious Prosecution

Kober, Rogers, and Sankey argue they are entitled to qualified immunity because there was probable cause to believe Jones committed the crimes she was charged with, *i.e.,* there was no constitutional violation. They also argue that a claim for malicious prosecution is not cognizable under § 1983. Their second argument is appropriately addressed under the clearly-established prong of the qualified immunity analysis, and the Court finds that a Fourth Amendment right to be free from malicious prosecution was not clearly established at the time they engaged in the alleged unconstitutional conduct. Accordingly, it is not necessary for the Court to address the probable cause argument.

"To be clearly established, preexisting law must make the unlawfulness of the officials' conduct apparent so that they have 'fair and clear warning' they are violating the constitution; qualified immunity therefore protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (quoting *White v. Pauly*, __U.S.__, 137 S. Ct. 548, 551 (2017) (per curiam). "'[C]learly established law' should not be defined 'at a high level of generality[,]'" *Pauly*, 137 S. Ct. at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), it "must be 'particularized' to the facts of the case, *Pauly*, 137 S. Ct. at 552

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary that there be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Pauly*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, 577 U.S.__, 136 S. Ct. 305, 308 (2015) (per curiam).

As late as April 30, 2012, the Eighth Circuit held that malicious prosecution was not a violation of substantive due process, but declined to decide "the issue of whether or when malicious prosecution violates the Fourth Amendment." *Harrington v. City of Council Bluffs*, 678 F.3d 676, 680-81 (8th Cir. 2012); *see Rehberg v. Paulk*, 566 U.S. 356, 366 (2012) ("[T]he Court does not suggest that § 1983 is simply a federalized amalgamation of pre-existing common-law claims, an all-in-one federal claim encompassing the torts of assault, trespass, false arrest, defamation, malicious prosecution, and more."). The court stated "*[i]f malicious prosecution is a constitutional violation at all*, it probably arises under the Fourth Amendment." 678 F.3d at 679 (emphasis added); *see also Bates v. Hadden*, 576 Fed. App'x 636, 639 (8th Cir. 2014) (per curiam) (affirming district court's finding of qualified immunity on malicious prosecution claim "because no such constitutional right had been clearly established.") (citing *Harrington*, 678 F.3d at 680)). Thus, after *Harrington*, it was not clearly established that malicious prosecution violated a constitutional right.

Since its decision in *Harrington*, the Eighth Circuit has stated, "a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a

claim of malicious prosecution,[11] 'must be judged' under the Fourth Amendment."
*Stewart*, 836 F.3d at 983 (citing *Albright v. Oliver*, 510 U.S. 266, 270-71 & n.4 (1994)
(plurality opinion)); *see also Greenman v. Jessen*, 787 F.3d 882, 890-91 (8th Cir. 2015)
(stating the plaintiff's due-process claim alleging he was arrested and prosecuted
without probable cause "is properly addressed under a Fourth Amendment analysis.").
The court did not, however, decide "the issue of whether or when malicious prosecution
violates the Fourth Amendment." *Harrington*, 678 F.3d at 680-81. Recently, in *Manuel
v. City of Joliet*, Justice Alito pointed out that the Supreme Court has not resolved the
issue of "whether a claim of malicious prosecution may be brought under the Fourth
Amendment." 137 S. Ct. at 923 (Alito, J., dissenting); *see also Wallace*, 549 U.S. at 390
n.2 ("We have never explored the contours of a Fourth Amendment malicious-
prosecution suit under § 1983.") (citing *Albright*, 510 U.S. at 270-71 (1994)). As such,
"existing precedent" has not "placed th[is] . . . constitutional question beyond debate" in
this Circuit.[12]

Jones has not provided any other case law that suggests such a constitutional
right was clearly established by the Eighth Circuit or the Supreme Court at the time
Kober, Rogers, and Sankey engaged in the alleged unconstitutional conduct. *Kulkay*,

---

[11] In *Harrington*, the Eighth Circuit also recognized that "[a]lthough differences between 'prosecution without probable cause' and 'malicious prosecution' may exist," "[t]he Supreme Court has used the terms 'prosecution without probable cause' and 'malicious prosecution' referring to the same claim." *Harrington*, 678 F.3d at 679 n.2 (citing *Albright v. Oliver*, 510 U.S. 266, 271 & n.4 (1994)).

[12] Other Circuits have concluded that plaintiffs may bring malicious prosecution claims under § 1983 for violation of their rights under the Fourth Amendment. *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 100-101 (1st Cir. 2013); *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2nd Cir. 2010); *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3rd Cir. 2014); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010); *Margheim v. Buljko*, 855 F.3d 1077, 1084-85 (10th Cir. 2017); *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016); *Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007).

847 F.3d at 642 (stating the constitutional or federal statutory right must be "clearly established at the time of the alleged infraction."); *see also* Comp. ¶ 61-3, ECF No. 1, Page ID 10-11 (alleging no investigation was conducted after April 4, 2013). Accordingly, Kober, Rogers, and Sankey are entitled to qualified immunity with respect to Jones's malicious prosecution claim, because their conduct did not violate a constitutional right that was clearly established at the time they engaged in it. Jones's § 1983 Fourth Amendment claims against the NSP Defendants will, therefore, be dismissed, with prejudice.

### 2. Sankey—Failure to Train or Supervise

Jones asserts "[t]he essence of [her] claim against Defendant Sankey is not based on *respondeat superior* but Sankey's failure to supervise and properly train Troopers Kober and Rogers." Pl.'s Br., ECF No. 62, Page ID 294.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions has violated the Constitution." *Parrish*, 594 F.3d at 1002. "Thus, 'the doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct.'" *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (emphasis in original)).

> When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.

*Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355).

18

Jones alleges Sankey was the superintendent of law enforcement and public safety for NSP, Comp. ¶ 10, ECF No. 1, Page ID 4, and that he "failed to properly supervise Kober and Rogers during their investigation," *Id.* at ¶ 65, Page ID 11.  There are no allegations of a pattern of unconstitutional acts committed by Kober and Rogers, and Jones admitted that "what Sankey knew and when he knew it is unknown . . . and cannot be known until the discovery phase."  Pl.'s Br., ECF No. 62, Page ID 295.  The Eighth Circuit "requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right," *Krigbaum*, 808 F.3d at 340, and Jones has not pled sufficient facts to permit even an inference of the existence of those facts.  She has stated only one instance of alleged unconstitutional conduct by Sankey's subordinates and a "single incident, or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability."  *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007).  Thus, the allegations in Jones's Complaint do not sufficiently plead a § 1983 claim against Sankey for failure to train or supervise.

### 3.  Fourteenth Amendment Fabrication of Evidence

Kober, Rogers, and Sankey argue they are also entitled to qualified immunity with respect to Jones's fabrication-of-evidence claim because their alleged conduct does not "rise[ ] to the level of 'shocking the conscience. . . .'" NSP Br., ECF No. 54, Page ID 217.

"It was clearly established by 2006 that the Fourteenth Amendment's guarantee of due process is violated by 'the manufacture of . . . false evidence' in order 'to falsely formulate a pretense of probable cause."  *Livers*, 700 F.3d 340, 354 (8th Cir. 2012) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002)).  "Intentionally or recklessly

failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers*, 700 F.3d at 351. "A manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." *Riddle v. Riepe*, 866 F.3d at 947 (quoting *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012)).

Separate from manufacturing false evidence,[13] a claim for "'reckless investigation,' [ ] include[s]: (1) coercing a suspect's confession; (2) 'purposefully ignoring evidence suggesting . . . innocence'; and (3) [imposing] 'systemic pressure to implicate a suspect in the face of evidence to the contrary.'" *Livers*, 700 F.3d 351 (quoting *Amrine v. Brooks*, 522 F.3d 823, 833-35 (8th Cir. 2008)). However, "[n]egligence and even gross negligence is not enough because the state action must be truly egregious and extraordinary to shock the conscience, and so severe as to amount to brutal and inhumane abuse of official power." *Livers*, 700 F.3d at 351 (internal quotations omitted).

Jones alleges that Kober, Rogers, and Sankey "used evidence that was false, misleading and demonstrably unreliable for the deliberate purpose of . . . [p]roviding probable cause for the arrest and confinement of [Jones]." Comp. ¶ 94, ECF No. 1, Page ID 15-16; *see also id.* at ¶ 99. She also alleges that Kober and Rogers failed to interview the coroner physician; failed to interview the physicians at Good Samaritan Hospital in Kearney, Nebraska; failed to review Eli Fenske's medical records or Whitney Fenske's prenatal health records; and failed to ask Whitney Fenske about her prenatal

---

[13] *See Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012) (distinguishing between a Fourteenth Amendment reckless investigation claim and a Fourteenth Amendment manufactured false evidence claim).

care.  Jones alleges that Rogers "relied solely on the summary statement of . . . Dr. [ ] Bolam at the University of Nebraska Medical Center . . . to erroneously conclude that [Jones] had been reckless in her care of the infant Eli Fenske."  Comp. ¶ 50, ECF No. 1, Page ID 9.

At this stage of the litigation, it is not possible to determine whether Kober, Rogers, and Sankey are entitled to qualified immunity on Jones's Fourteenth Amendment claim for manufacturing false evidence or purposefully ignoring evidence suggesting her innocence, because the factual allegations in the Complaint are not sufficiently specific to enable the Defendants or the Court to discern *what* evidence was falsified, or what *material* evidence suggesting Jones's innocence was deliberately or recklessly ignored.  *McDonough*, 799 F.3d at 946 (quoting *Twombly*, 550 U.S. at 555) (The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'").  Jones will be given leave to amend her Complaint to state any such facts with specificity.

### 4. Conspiracy

Kober, Rogers, and Sankey argue they are entitled to qualified immunity on Jones's § 1983 civil conspiracy claim because the plausibility of that claim depends on the deprivation of a constitutional right and Jones has not stated a claim for the deprivation of a constitutional right.  *See Riddle*, 866 F.3d at 949 ("Absent a constitutional violation, 'there is no actionable conspiracy claim.'") (quoting *Slusarchuk v. Hoff*, 346 F.3d 1178, 1183 (8th Cir. 2003)).  Because the Court will allow Jones leave to amend her Complaint to state a deprivation of a constitutional right, the Court will also allow her to include a civil conspiracy claim in the amended pleading.

**IV. Custer County Defendants' Motion to Dismiss**

Jones's remaining constitutional claims against the Custer County Defendants are a Fourth Amendment claim for malicious prosecution, a Fourteenth Amendment claim for manufacturing false evidence, and a § 1983 civil conspiracy claim.

The Custer County Defendants first argue, and Jones concedes, that the Custer County Attorney's Office should be dismissed because it is not a proper party to this action. The Custer County Attorney's Office will, therefore, be dismissed. The Custer County Defendants also argue the prosecutors, Bowers and Clark, are entitled to either absolute or qualified immunity and that Jones failed to allege municipal liability against Custer County.

**A. Absolute Immunity**

"Absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)). It "protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case 'insofar as that conduct is intimately associated with the judicial phase of the criminal process.'" *Sample*, 836 F.3d at 916 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991). Thus, "[p]rosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Sample*, 836 F.3d at 916 (citing *Imbler*, 424 U.S. at 420-27), and they are entitled to immunity for the decision to bring charges "whether [they have] probable cause or not[,]" *Saterdalen v. Spencer*, 725 F.3d 838, 843 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993)); *see also Simes v. Ark. Judicial Discipline and Disability Comm'n*, 734 F.3d 830, 834 (8th Cir.

22

2013) ("[A]bsolute immunity applies to a prosecutor's decision to bring an indictment, whether he has probable cause or not."). Further, "[a]bsolute immunity . . . 'is not defeated by allegations of malice, vindictiveness, or self-interest,' *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 580 (8th Cir. 2006), and applies even if the prosecutor's steps to initiate a prosecution are patently improper." *Sample*, 836 F.3d at 916 (citing *Saterdalen*, 725 F.3d at 842).

"However, purely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." *Winslow*, 696 F.3d at 739 (quoting *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006)). In *Buckley v. Fitzsimmons*, the Supreme Court explained that "[t]here is a difference between the advocate's role in evaluating evidence . . . as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." 509 U.S. at 273. It is "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer" that he is not entitled to absolute immunity. *Id.* Therefore, there is a distinction between a police officer's initial collection of evidence and a prosecutor's "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . ." *Id.* The latter function is entitled to absolute immunity. *See Forrester v. White*, 484 U.S. 219, 229 (1987) (The court must look to "the nature of the function performed . . . .").

Jones broadly argues that Bowers and Clark engaged in "[t]he gathering, reviewing and evaluation of evidence to determine whether or not there [was] probable cause[,]" which is an investigatory role "normally performed by a detective or police

officer[.]"  Pl.'s Br., ECF No. 61, Page ID 260.  However, "[i]t is fundamental that 'preparation both for the initiation of the criminal process and for trial, may require the obtaining, reviewing, and evaluating of evidence.'"  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1267 (8th Cir. 1996) (quoting *Imbler*, 424 U.S. at 431 n.33).  "As county attorney[s]," they are "under a duty to review" the evidence brought to them in their "role as advocate[s] for the state."  *Brodnicki*, 75 F.3d at 1267.  Thus, the broad argument that Bowers and Clark gathered, reviewed, and evaluated evidence to determine whether criminal charges were warranted does not render absolute immunity inapplicable.

Jones's argument that Bowers and Clark never had probable cause to bring criminal charges against her and lacked jurisdiction to charge her with a violation of the Nebraska Uniform Credentialing Act also does not defeat the application of absolute immunity.  *Sample*, 836 F.3d at 916 ("[A]bsolute immunity . . . applies even if the prosecutor's steps to initiate a prosecution are patently improper."); *see also Simes*, 734 F.3d at 834 ("[A]bsolute immunity applies to a prosecutor's decision to bring an indictment, whether he has probable cause or not.").  The inquiry must focus on whether Bowers and Clark engaged in purely administrative or investigative actions that do not relate to the initiation of a prosecution.  *Winslow*, 696 F.3d at 739.

Jones alleges that the NSP, "specifically Defendants Rogers and Kober, conducted an investigation into the death of Eli Fenske[ ]" and "presented the Custer County Attorney's Office with an Affidavit for Arrest Warrant signed by Defendant Rogers requesting that the Court issue a warrant for the arrest of [Jones]."  Comp. ¶ 47& 53, ECF No. 1, Page ID 8-9.  Their investigation included interviews of several

witnesses, including Jeff Fenske, Whitney Fenske, and the physicians who treated Eli Fenske. Jones did not allege that Bowers and Clark engaged in this, or any other, initial police investigation. In her response brief, Jones stated that "Defendant Jeff Rogers presented Defendants Bowers and Clark with an arrest warrant affidavit requesting that a warrant issue for [m]anslaughter, . . . setting forth the evidence that he and Defendant Kober had gathered in this matter." Pl.'s Br., ECF No. 61, Page ID 259. She further stated "Defendants Bowers and Clark evaluated the evidence presented by Jeff Rogers to determine if probable cause existed for a charge of [m]anslaughter." *Id.* at Page ID 260. Thus, there are no factual allegations by Jones that Bowers and Clark engaged in the type of investigation "normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273. The "professional evaluation of the evidence assembled by the police" is a function intimately associated with the judicial phase of the criminal process. *Buckley*, 509 U.S. at 273.

The Court concludes that Bowers and Clark are entitled to absolute immunity.[14] *Sample*, 836 F.3d at 916 ("Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law."); *see also Powers*, 229 F. Supp. 3d at 902 (finding that the defendant prosecutors are entitled to absolute immunity "with respect to plaintiffs' § 1983 claims of malicious prosecution"). Thus, Jones's claims against them in their individual capacities,[15] will be dismissed, with prejudice.

### B. Municipal Liability

---

[14] Even if Bowers and Clark were not granted absolute immunity on Jones's malicious prosecution claim, they would be entitled to qualified immunity. *See supra* Section III.B.1.

[15] *VanHorn v. Oelschalager*, 502 F.3d 775, 778-79 (8th Cir. 2007) (collecting cases and stating "absolute, quasi-judicial immunity is not available for defendants sued in their official capacities.").

The Court will also dismiss Jones's claims against Custer County because the individual prosecutors, Bowers and Clark, are entitled to absolute immunity and cannot be held liable on any of her claims. *See Patterson v. Von Riesen*, 999 F.2d 1235, 1238 n.2 (8th Cir. 1993). In *Patterson*, the Eighth Circuit explained that "[f]or the county to be liable, [the plaintiff] must be able to attach liability to the decision in question." *Id.* "Because of the prosecutors' absolute immunity, [the plaintiff] cannot attach liability to the decision in question, and, thus, even if the policy was county policy, [the plaintiff] still may not recover damages." *Id.*; *see also Sample*, 836 F.3d at 917 n.3. Therefore, the claims against Custer County will be dismissed, with prejudice.

## CONCLUSION

Jones will be given leave to file an amended complaint against Kober, Rogers, and Sankey, in their individual capacities, stating with specificity any facts supporting the following claims: (1) a Fourteenth Amendment claim for manufacture of false evidence, (2) a Fourteenth Amendment claim for reckless investigation, and (3) a § 1983 civil conspiracy claim. The remainder of her claims will be dismissed, with prejudice.

Accordingly,

IT IS ORDERED:

1.  The Motions to Dismiss, ECF No. 53 and ECF No. 55, are granted;

2.  Plaintiff Judy Jones's 42 U.S.C. § 1983 claims for a violation of her civil rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution are dismissed, with prejudice;

3.  Defendants, the Nebraska State Patrol, the Custer County Attorney's Office, Custer County, Steven Bowers, and Glenn Clark are dismissed from this action;

4.      All of the claims asserted against Defendants Chris Kober, Jeff Rogers, and David Sankey, in their official capacities, are dismissed, with prejudice;

5.      The remaining claims against Defendants Chris Kober, Jeff rogers, and David Sankey in their individual capacities are dismissed, without prejudice; and

6.      Plaintiff Judy Jones is given leave to file an Amended Complaint on or before May 15, 2018, consistent with this Memorandum and Order.

Dated this 26th day of April, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge