IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUDY K. JONES,<br><br>              Plaintiff,<br><br>vs.<br><br>JEFF ROGERS and CHRIS KOBER,<br><br>              Defendants. | 8:17CV394<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the Motion to Dismiss, ECF No. 72, filed by Defendants Jeff Rogers and Chris Kober. For the reasons stated below, the Motion will be granted.

### BACKGROUND

      The following facts are those alleged in the Amended Complaint, ECF No. 67, and assumed true for purposes of the pending Motion to Dismiss.

      Plaintiff Judy Jones was a practicing direct-entry midwife. She had no Nebraska state-issued license or certification to practice midwifery, but became a "Certified Professional Midwife" with the North American Registry of Midwives in 1995. Am. Comp. ¶ 9, ECF No. 67, Page ID 384. As a "devout Christian," she believes midwifery is "an essential part of her religious practice." *Id.* ¶ 11, Page ID 385.

      On April 15, 2011, Jones entered into a Home Birthing Parent(s) Agreement (Birthing Agreement), ECF No. 67, Page ID 397, with Jeff and Whitney Fenske wherein they agreed that Jones would perform midwife services for the upcoming birth of the Fenskes' child. At that time, Jones also provided the Fenskes with an Informed Disclosure Statement, ECF No. 67, Page ID 399. The Birthing Agreement stated "Judy

is a Direct-Entry Midwife [ ], NOT a doctor or Certified Nurse Midwife [ ]. She is not licensed by any government agency, however, she is recognized and certified by the North American Registry of Midwives [ ] as an experienced Certified Professional Midwife [ ]." ECF No. 67, Page ID 397. Jones and the Fenskes also agreed that Dr. Angela Pruden, in Broken Bow, Nebraska, would act as a stand-by physician in the event of a medical emergency.

With Jones present, Whitney Fenske gave birth to a son, Eli Fenske, in the Fenskes' home at 5:21 a.m., on September 24, 2011. About ninety minutes after birth, Eli exhibited breathing problems. Jones "suctioned [his] airway" and "performed rescue breathing." Am. Comp. ¶ 19, ECF No. 67, Page ID 386. Eventually, Eli was taken to the medical center in Broken Bow, Nebraska. He arrived at the medical center's emergency room at around 8:10 a.m. and he was seen by Dr. Pruden, the stand-by and emergency room physician. Eli had extremely low blood sugar levels, which caused his recurring breathing problems. At around 11:30 a.m., Eli was transported to the Good Samaritan Hospital in Kearney, Nebraska, where his condition worsened and he began to have seizures. He was then transported to the University of Nebraska Medical Center in Omaha, Nebraska (UNMC), and admitted at 3:23 p.m. At that time, Eli was experiencing respiratory distress syndrome, hypoglycemia, and seizures. His blood sugar levels never normalized and he suffered permanent brain damage.

On October 10, 2011, Eli was placed on hospice care and discharged from UNMC. That same day, the Fenskes chose to discontinue life-sustaining measures and, according to Dr. Jaskierny, the coroner physician, Eli died nine days later, on October 20, 2011, from dehydration and malnutrition secondary to withdrawal of food and fluids on

hospice care. Jones alleges it was "later determined that Eli suffered brain injuries due to complications from prolonged and unrelenting hypoglycemia, caused by Smith-Lemli-Opitz Syndrome, which went undiagnosed by the medical professionals at each of the three hospitals in which he was seen." Am. Comp. ¶ 34, ECF No. 67, Page ID 388. She does not allege who made this determination or when exactly it was made, but she alleges Eli's Smith-Lemli Syndrome was a congenital condition and that her midwife services did not contribute to Eli's condition or the cause of his death in any way.

Defendants, officers with the Nebraska State Patrol, investigated Eli's death. They interviewed the Fenskes, Dr. Pruden, and Dr. David Bolam of UNMC, and contacted the Licensure Unit of Nebraska's Department of Health and Human Services. On December 10, 2012, Rogers submitted an affidavit to the County Court for Custer County, Nebraska, ECF No. 67, Page ID 403, in support of a warrant for Jones's arrest. The affidavit concluded there was probable cause to believe Jones committed manslaughter. In the affidavit, Rogers stated "[t]he investigation revealed that the mid wife failed to do any follow up tests after the child was delivered to ensure that the child was in good health nor did she do any blood tests prior to birth." *Id.* at Page ID 404. He explained that, according to Dr. Bolam, Eli suffered an encephalopathy that destroyed part of his brain, due to insufficient post-birth care. The Fenskes told Rogers that Jones failed to timely seek emergency medical assistance, and the Licensure Unit of the Nebraska Department of Health and Human Services told Rogers that it issued Jones a cease-and-desist order in 1999, directing her to stop practicing medicine.

Jones was charged with one count of manslaughter on December 10, 2012, and she was arrested on December 19, 2012. She was released seven days later pending

3

trial. On March 21, 2013, the Custer County Attorney's Office added one count of criminal impersonation and one count of practicing medicine without a license. On April 4, 2013, the County Court dismissed all charges following a preliminary hearing, Order, ECF No. 67, Page ID 406, and, by this time, the Defendants had concluded their investigation. On June 13, 2013, Jones was charged again with the same three offenses: manslaughter, criminal impersonation, and unlicensed practice of medicine. On July 26, 2013, the County Court held another preliminary hearing on the refiled charges and the court "bound the matter over to the District Court where Jones was ordered to stand trial." Am. Comp. ¶ 51, ECF No. 67, Page ID 391. The refiled charges were based on the same evidence collected during the Defendants' investigation. On October 19, 2015, the Custer County Attorney's Office dismissed all charges.

On October 17, 2017, Jones filed this lawsuit against several defendants and asserted claims under 42 U.S.C. § 1983 for violations of her rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *Jones v. Custer County et al.*, 8:17CV394, 2018 WL 2050568 (D. Neb. April 4, 2018). Pursuant to multiple motions to dismiss, Jones's claims were dismissed and she was granted leave to file her Amended Complaint, which asserts three claims against Defendants Kober and Rogers, in their individual capacities: (1) a Fourteenth Amendment claim for fabricating evidence, (2) a Fourteenth Amendment claim for reckless investigation, and (3) a § 1983 claim for civil conspiracy. *Id*. at 11. Defendants filed a motion to dismiss these reasserted claims.

**STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Based on the facts alleged in the Amended Complaint, Jones's reckless-investigation claim is barred by the statute of limitations, and Defendants are entitled to qualified immunity on her manufactured-false-evidence claim. Jones's claim under § 1983 for civil conspiracy will also be dismissed, because there is no underlying constitutional violation.

### I. Reckless Investigation

"To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's 'failure to investigate was intentional or reckless, thereby shocking the conscience.'" *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012) (quoting *Cooper v. Martin*, 634 F.3d 477, 481 (8th Cir. 2011)). Among the "circumstances [which] indicate reckless or intentional failure to investigate that shocks the conscience . . . [is] evidence that investigators purposefully ignored evidence suggesting the defendant's innocence[.]" *Winslow*, 696 F.3d at 732 (quoting *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2012)). However, "[n]egligence and even gross negligence is not enough because the state action must be truly egregious and extraordinary to shock the conscience, and so severe as to amount to brutal and inhumane abuse of official power." *Livers v. Schenk*, 700 F.3d 340, 351 (8th Cir. 2012)

(internal quotations omitted). Thus, "negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process." *Winslow*, 696 F.3d at 732.

The length of the statute of limitations for a § 1983 claim is the same as the length of the statute of limitations "for personal-injury torts" in "the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, the applicable statute of limitations in this case is four years. Neb. Rev. Stat. § 25-207. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). "Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Id*. (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)). "Section 1983 claims accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081-82 (8th Cir. 2018) (quoting *Wallace*, 549 U.S. at 388).

Jones claims the Defendants ignored the Birthing Agreement, the Informed Disclosure Statement, the autopsy report, Eli's medical records, and pertinent Nebraska law. She also claims they failed to interview the coroner physician who performed the autopsy or any other medical care provider, expert, or consultant.[1] According to the Amended Complaint, the Defendants concluded their investigation on or before April 4, 2013. Am. Comp. ¶ 45-6, ECF No. 67, Page ID 390 ("Following the dismissal of all

---

[1] The allegation that the Defendants "[f]ailed to consult with any medical care provider, consultant or expert regarding Eli's cause of death[,]" Am. Comp. ¶ 40, ECF No. 67, Page ID 389, contradicts the earlier allegation that they "interviewed . . . Dr. Angela Pruden [and] Dr. David Bolam . . . ," Am. Comp. ¶ 36, ECF No. 67, Page ID 388.

7

charges against [her] [on April 4, 2013], neither Rogers nor Kober conducted any further investigation in this matter."). By July 26, 2013, Rogers had testified at two preliminary hearings regarding the evidence presented against Jones and criminal charges had been filed against her two separate times. Thus, the full scope and contours of the Defendants' investigation, including the evidence they may have intentionally or recklessly ignored, was clear and the resulting damage—criminal prosecution—was realized no later than July 26, 2013. *Wallace*, 549 U.S at 388-91 (explaining that accrual is governed by common-law tort principles and, traditionally, a "tort cause of action accrues . . . when the wrongful act or omission results in damages") (internal quotation omitted). Accordingly, Jones's reckless-investigation claim accrued no later than July 26, 2013. Because Jones initiated this action on October 17, 2017—more than four years later—her claim for reckless investigation under the Fourteenth Amendment is barred by the statute of limitations.

Citing Nebraska's continuing-tort doctrine, Jones argues her reckless-investigation claim did not accrue until the criminal charges against her were dismissed by the Custer County Attorney's Office on October 19, 2015, because she continuously suffered harm until that date. Pl.'s Br., ECF No. 76, Page ID 441 (citing *Gard v. City of Omaha*, 786 N.W.2d 688, 695 (Neb. App. 2010)). As the Court previously noted, however, "the accrual date of a § 1983 cause of action . . . is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). It is "governed by federal rules conforming in general to common-law tort principles," *id.*, and although those rules recognize a "continuing violation" theory of accrual, *Humphrey*, 891 F.3d at 1081-82, Jones provided no other relevant authority to support the application of that theory to this case.

8

Further, Jones's argument that she continuously suffered harm as a result of the Defendants' allegedly reckless investigation does not make it a continuing violation. *See Humphrey*, 891 F.3d at 1082; *Wallace*, 549 U.S. at 391. By July 26, 2013, the investigation had concluded, charges had been filed multiple times, and Rogers had testified at two separate preliminary hearings regarding the evidence collected during the investigation. Jones was also aware of the existence of each piece of evidence, or source of evidence, that she claims the Defendants ignored. Her contention that "damages continued to accrue and increase until the criminal case was terminated" and, therefore, she "could not have filed suit or obtained relief for constitutional violations for a reckless investigation until an end point had been determined" does not make the alleged constitutional violation a continuing violation. Pl.'s Br., ECF No. 76, Page ID 442; *See Wallace*, 549 U.S. at 391 ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (internal quotation omitted); *Humphrey*, 891 F.3d at 1082 (explaining that the subsequent effects or inevitable consequences of the original violation are not a basis for applying the continuing violation theory of accrual). Accordingly, the Court finds that Jones's claim for reckless investigation was complete and present no later than July 26, 2013.[2]

## II. Manufactured False Evidence

---

[2] In *Wallace*, the Supreme Court addressed the concern that, based on its holding with respect to accrual, § 1983 claims for damages will sometimes accrue while the § 1983 plaintiff's state criminal proceeding is still pending. 549 U.S. at 393-95. The Court explained that this circumstance does not toll or extend the accrual date. *Id.*; *see also id.* (Stevens, J, concurring) ("[W]hile it may well be appropriate to stay the trial of claims of this kind until after the completion of state proceedings, . . . I am aware of no legal basis for holding that the cause of action has not accrued once the . . . violation has been completed.").

"Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Carter*, 831 F.3d at 1107). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "an official is entitled to qualified immunity unless both prongs are satisfied," *Kulkay*, 847 F.3d at 642.

"A manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017) (quoting *Winslow*, 696 F.3d at 732).

Jones alleges that the Defendants are responsible for "falsifying information either directly, or indirectly by providing false information to others, that resulted in [Eli's] death certificate[3] containing false information." Am. Comp. ¶ 60, ECF No. 67, Page ID 393.

---

[3] Jones argues her manufactured-false-evidence claim is not barred by a limitations period because she did not discover that the death certificate contained false information until June 30, 2015, the day the

10

Eli's death certificate, ECF No. 67, Page ID 408, names Dr. Jaskierny as the "certifier" of the document, but Jones alleges that Dr. Jaskierny did not prepare the death certificate nor was he consulted in connection with its preparation. Am. Comp. ¶¶ 61-4, ECF No. 67, Page ID 393-4. Jones alleges that at Dr. Jaskierny's deposition on June 30, 2015, he testified that although the death certificate accurately stated Eli's cause of death was "Dehydration and Malnutrition Secondary to Withdrawal of Food and Fluids On Hospice Care," he did not agree with its conclusion that the cause of death was a consequence of a large cerebral infarct. *Id.*

Because Jones has alleged that Dr. Jaskierny did not prepare or certify the death certificate, the veracity of the conclusions in the death certificate, falsely attributed to Dr. Jaskierny, plausibly can be questioned. However, Jones's claim that the Defendants deliberately fabricated evidence and then provided it to the actual preparer, either directly or indirectly, to frame Jones is too speculative to state a plausible claim. The death certificate was prepared on January 31, 2012, and filed on February 1, 2012. Jones does not allege who actually prepared the death certificate, whether the Defendants were involved in its preparation in any way, or whether any evidence collected by the Defendants was a source for the information contained in the certificate. She only argues that "it defies logic that Defendants would not have contributed to or known of the false

---

Dr. Jaskierny, the purported certifier, testified he did not prepare or certify the document. However, Jones cited no authority supporting an application of the discovery rule to her manufactured-false-evidence claim and the Defendants did not address this issue. Therefore, for purposes of this Memorandum and Order, the Court will assume, without deciding, that Jones's manufactured-false-evidence claim is timely. *See, e.g.*, *McDonough v. Anoka Cty.*, 799 F.3d 931, 940 (8th Cir. 2015) (questioning Eighth Circuit precedent, set out in *Comcast of Ill. X v. Mult-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007), establishing that in federal-question cases the discovery rule is applicable unless there is a contrary directive from Congress); *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644-45 (2010) ("[W]here a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*.").

11

information contained in the death certificate." Pl.'s Br., ECF No. 76, Page ID 444. Thus, whether the Defendants were responsible for the information contained in the death certificate and falsely attributed to Dr. Jaskierny is speculative.

Jones also fails to allege what evidence the Defendants falsified to cause the death certificate to contain false information. She simply concludes that because the death certificate contained false information, the Defendants must be responsible on a theory of fabricating evidence. Her manufactured-false-evidence claim is, therefore, too speculative to be plausible. Because that claim lacks plausibility, the Defendants are entitled to qualified immunity with respect to that claim. *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). As such, Jones's manufactured-false-evidence claim will be dismissed, without prejudice, and, if additional facts supporting a plausible claim exist, she may assert them in a second amended complaint.

Because both of Jones's underlying Fourteenth Amendment claims will be dismissed, the court will also dismiss Jones's claim under § 1983 for civil conspiracy. *Riddle*, 866 F.3d at 949 (quoting *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) ("Absent a constitutional violation, there is no actionable conspiracy claim.")).

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 72, filed by Defendants Jeff Rogers and Chris Kober, is granted;

2. Plaintiff Judy Jones's Fourteenth Amendment claim for reckless investigation is dismissed, with prejudice; and

3. Plaintiff Judy Jones's Fourteenth Amendment claims for manufactured false evidence and civil conspiracy under 42 U.S.C. § 1983 are dismissed, without prejudice;

4. In accordance with this memorandum and order, Plaintiff Judy Jones may file a second amended complaint on or before August 10, 2018; and

5. If a second amended complaint is not timely filed, this action will be dismissed, with prejudice.

Dated this 3rd day of August, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge